STEVENSON, J.
PGA Property Owners Association, Inc., appeals the trial court’s final declaratory judgment which formulated a new monthly assessment for the owners in the Golf Villas, a set of condominium units located in PGA Village. The Golf Villas cross-appeal, contending that the trial court erred in calculating the new assessment. Because we find error in the trial court’s overall formulation of the assessment methodology, we find it unnecessary to address the cross-appeal.
PGA Village, formerly known as the Reserve, is a residential golf course community in St. Lucie County, and PGA Property Owners Association, Inc. (PGA) is the master homeowner association in charge of the entire development. Golf Villas is composed of two separate condominium developments, Golf Villas I (GV-I) and Golf Villas II (GV-II), located within PGA Village. All of the property in PGA Village is subject to the Master Declaration, which was executed by the master developer, Callaway Land and Cattle Company, Inc. *258 (Callaway), on January 5, 1989. In 1995, Callaway sold a portion of the property to David Ward, who subsequently developed GV I. John Nierlich, who became acquainted with Ward, purchased property for GV-II and began its development. In April 1998, Kolter Property Company (Kolter) and its affiliated companies purchased PGA Village from Callaway.
Callaway charged Golf Villas’ owners less in assessments than the other members of the Master Association in 1996, 1997, and from January to April of 1998. Kolter continued to charge the disproportionate assessments to Golf Villas’ owners for the remainder of 1998 and the first two quarters of 1999. At the start of the year 2000, Kolter attempted to assess the owners of Golf Villas for the benefit of a guardhouse and security gate which were not utilized at their complex. It was undisputed that the Golf Villas communities were not in that portion of PGA Village where the guardhouse and security gate were constructed. PGA contended, however, that Golf Villas benefited from them because they increased the overall value of the property. In addition, PGA argued that, because Golf Villas’ residents were allowed to go behind the gated area, they ultimately benefitted from the added security. On the other hand, Golf Villas’ residents testified that they were regularly denied access to the gated area in PGA Village. There was also an increase of nine dollars per month charged to all owners at PGA Village for the twenty-four hour roving security guard. Golf Villas disputed PGA’s contention that the security service conducted roving patrols through the Golf Villas communities. Overall, at that time, the fees being assessed to Golf Villas increased from approximately $31 a month to $95.91.
On July 11, 2000, Golf Villas filed an action for declaratory judgment, asking that they no longer be required to pay for services that did not benefit its owners and a refund of previously paid, improperly assessed fees. The trial court found that a letter written by Scott Wingfield, the original President of PGA, dated August 8, 1996, created a sub-district as to Golf Villas within the PGA Village. Then, the trial court calculated a percentage of the total PGA budget that Golf Villas should be responsible for in the year 2000 based on the ratio of assessments attributable to Golf Villas in 1996 and the total 1996 PGA budget. Ultimately, the trial court determined that Appellees should be charged $50.45 a month, and that Appellant could not charge them more than 6.2% of their current budget.[1]
First, we do not find that the 1996 Wingfield letter actually created a sub-district, but rather, Golf Villas simply qualifies as a sub-district under the definition of a sub-district as set forth in Article I of the Master Declaration, which provides:
(FF) Sub District shall mean and refer to a portion of a District which is similar in product type (Villa, Patio Home, etc.) and density and which is governed by a Residential Association.
It is clear that Golf Villas is a sub-district-it is similar in product type, all of the units located within Golf Villas are villas, and it is governed by a Residential Association. Thus, the trial court was correct in its determination that Golf Villas was a sub-district. Accordingly, affirmance on this issue is proper. See Combs v. State, 436 So.2d 93, 96 (Fla.1983) (holding that, where trial court reached the right result albeit for wrong reasons, affirmance is proper).
*259 Nevertheless, in fashioning its remedy, the trial court’s assessment plan was not consistent with the definitions provided in the Master Declaration. When a document’s language is clear, a court cannot indulge in construction or interpretation of its plain meaning. See BMW of N. Am., Inc. v. Krathen, 471 So.2d 585, 587 (Fla. 4th DCA 1985), rev. denied, 484 So.2d 7 (Fla.1986); Saltzman v. Ahem, 306 So.2d 587, 539 (Fla. 1st DCA 1975). The definitions as provided in Article I of the Master Declaration are as follows:
(B) Base Assessment shall mean and refer to the operating funds of the Association that are utilized for the betterment of the entire community and which are assessed equally against all Owners within the Property and refers to those charges against each Parcel made by the Association from time to time, for the purposes and subject to the terms, set forth herein, (emphasis added).
(GG) Sub-District or District Assessment shall mean and refer to such ease where the Association provides maintenance services ... that inures to the benefit of only those owners residing [within the Sub-District or District]....
Pursuant to the Master Declaration, a base assessment must be (1) equally assessed to all owners and (2) reflective of the operating funds of the Association that are utilized for the betterment of the entire community. In order to accomplish those criteria, a base assessment would not include the charges for benefits that the entire community does not receive. In addition, all owners throughout the entire PGA Village should pay the same base assessment (to be charged equally). Then, an additional sub-district or district assessment may be determined and charged to each individual development within the PGA Village to account for any additional expenditures for services that benefit that particular development (such as maintenance, lighting, security, etc.). The trial court’s remedy did not reflect the clear definitions included in the Master Declaration because it created neither a base assessment to be charged equally for funds utilized by the entire PGA Village nor a sub-district assessment that accounted strictly for the benefits received by Golf Villas. Because the trial judge erred in interpreting how a base assessment and a sub-district assessment should be charged and, therefore, erred in determining a percentage of the annual budget to be charged, the order must be reversed.
Furthermore, it was unclear from the trial court’s order whether owners of units in Golf Villas should be charged for the benefit of the roving security, security gate, and guardhouse since the trial court simply stated that they received “less benefit” than those owners who resided behind the gate. Consequently, a factual finding is required on the issue of whether Golf Villas receives sufficient benefit from those additional expenditures to justify its being charged for them.
Accordingly, we reverse and remand for further proceedings and findings consistent with this opinion.
REVERSED and REMANDED.
POLEN, C.J., and STONE, J., concur.

. The trial court determined that each unit had to pay $31.50, plus the cost for cable television, which was $18.95, giving a total obligation of $50.45.